IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHARITY CALLOWAY, | : | |
|     Plaintiff, | : | |
| | : | |
|     v. | : | CIVIL ACTION NO. 26-CV-3371 |
| | : | |
| SPB HOSPITALITY, | : | |
|     Defendant. | : | |

**MEMORANDUM**

COSTELLO, J.                                                                                    JUNE 12, 2026

Plaintiff Charity Calloway initiated this *pro se* civil action alleging claims of employment discrimination against SPB Hospitality ("SPB").[1]  Calloway also filed a motion to proceed *in forma pauperis*, as well as a motion for appointment of counsel.  For the following reasons, the Court will grant Calloway leave to proceed *in forma pauperis* and dismiss the Complaint.[2]

---

[1] Calloway has filed several employment discrimination cases with this court.  The first was dismissed upon agreement of the parties upon settlement.  *See Calloway v. Landmark Americana*, Civ. A. No. 24-6230 (E.D. Pa.).  The second case was dismissed upon statutory screening pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  *See Calloway v. Villanova University*, Civ. A. No. 25-0400 (E.D. Pa.).  More recently, on May 12, 2026, Calloway filed a "Motion to Combine" via the court's Electronic Document Submission system and indicated that she was filing a new case.  *See In re Calloway*, Civ. A. No. 26-3349 (E.D. Pa.).  The following day, Calloway initiated another civil matter naming the United States of America as defendant.  *See Calloway v. United States of America*, Civ. A. No. 26-3293 (E.D. Pa.).  The Court will address Civil Action No. 26-3349 and Civil Action No. 26-3293 separately.

[2] Several days after filing the Complaint in this matter (ECF No. 2), Calloway filed an "Addendum to Civil Complaint filed on May 15, 2026," (ECF No. 7).  The Federal Rules of Civil Procedure do not contemplate piecemeal pleadings or the amalgamation of pleadings, even in the context of a *pro se* litigant.  *See Argentina v. Gillette*, 778 F. App'x 173, 175 n.3 (3d Cir. 2019) (*per curiam*) (explaining that "liberal construction of a *pro se* amended complaint does not mean accumulating allegations from superseded pleadings"); *Bryant v. Raddad*, No. 21-1116, 2021 WL 2577061, at *2 (E.D. Pa. June 22, 2021) ("Allowing a plaintiff to file partial amendments or fragmented supplements to the operative pleading, 'presents an undue risk of piecemeal litigation that precludes orderly resolution of cognizable claims.'" (quoting *Uribe v. Taylor*, No. 10-2615, 2011 WL 1670233, at *1 (E.D. Cal. May 2, 2011)); *Brooks-Ngwenya v.*

## I.    FACTUAL ALLEGATIONS[3]

Calloway used the Court's form complaint for alleging employment discrimination to plead her claims.  By checking the appropriate locations on the form, Calloway indicates that she brings claims of race and gender discrimination under Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e-2000e-17, as well as the Pennsylvania Human Relations Act ("PHRA"), and that she seeks injunctive relief and damages.  (Compl. at 3, 5, 7.)  Calloway also indicates on the form that she is an African American female.  (*Id.* at 5.)  The discriminatory conduct of which Calloway complains includes – "termination of my employment," "failure to stop harassment," "unequal terms and conditions of my employment," "retaliation," and "other," which she explains as "stalking and harassment."  (*Id.* at 4-5.)

As the basis for her claims, Calloway alleges that SPB repeatedly took adverse employment actions against her based on her race and sex, causing physical injury, emotional distress, and lost wages.  (*Id.* at 5.)  She also states that SPB retaliated against her after she reported a January 23, 2025 workplace injury and was put on "investigative leave" on May 15, 2025, despite previous "good" customer reviews.  (*Id.*)  Calloway asserts that the date she was put on leave "mock[s] a family member's unexpected death."  (*Id.*)  She also claims that her employment was terminated after SPB "illegally abetted a rapid incident of false negative customer complaints and false, defamatory write-ups mocking [her] complaints previously

---

*Bart Peterson's the Mind Tr.*, No. 16-193, 2017 WL 65310, at *1 (N.D. Ind. Jan. 6, 2017) ("Piecemeal pleadings cause confusion and unnecessarily complicate interpretation of a movant's allegations and intent[] . . . .").  Accordingly, the allegations in the Addendum are not part of the Complaint.  In any event, as discussed further below, they are essentially the same as presented in Calloway's Complaint and exhibits.

[3] The following allegations are taken from the Complaint and documents attached to the Complaint.  The Court adopts the sequential pagination supplied by the CM/ECF docketing system to the filings in this case.

written to management about workplace discrimination, isolation, sexual harassment, mocking and unsafe working conditions. including physical abuse." (*Id.*) According to Calloway, she was "coerced into a phone meeting with HR Brooke Townley" on May 15, 2026. (*Id.*) Calloway states that SPB stalked her "by colluding with former, disgruntled employers (e.g., Peter Scarpati and Taylor Lucas at the Wistar Institute, and Gerarodo Jimenez at Hilton Hotel) by way of recruiting new staff (e.g., Gee, Lucas, and Jamie) and new Human Resources SPB Hospitality, and hosting for the first time healthcare buyout events and weddings to mock [her] previous employments in hospitals and their violations." (*Id.*)

In support of these allegations, Calloway attached to the Complaint a copy of the Equal Employment Opportunity Commission's Notice of Right to Sue Letter dated February 19, 2026. (ECF No. 2-1 at 1-3.) She also attached to the Complaint a copy of the Charge of Discrimination that she submitted to the EEOC. (*Id.* at 4-7.) In the EEOC Charge, Calloway stated that she was hired on September 23, 2024, for the position of server at Amada Radnor, where she was harassed, stalked, discriminated against, and suffered retaliation on the basis of her race, gender, and protected activities. (*Id.* at 4.) She stated that she was the only African American female and was isolated and mistreated by Caucasian staff, and suffered harassment such as intentional shoving, tapping her backside in passing, was subject to "humiliating and insulting beratements from other staff and management," "unnecessary loud shouting and yelling," "staff that repeatedly impersonated [her] while unnecessarily rushing to complete [her] assignments in what [Calloway] allege[s] was motive to defraud [her]," unfair assignments that significantly reduced her earnings, "refusal to provide adequate support staff" on shifts where she was the only server resulting in fatigue, "wrongful exclusions," and "technical harassments through their POS system." (*Id.*) Calloway asserted that months after she was onboarded at the restaurant, "the

3

employer hired SPB Hospitality human resources, which has the same initials as [her] previous supervisor Peter Scarpati of The Wistar Institute," as evidenced by a prior EEOC charge. (*Id.*) She further claimed that SPB also hired a food runner "whose name was Lucas in reference to The Wistar Institute's human resources person, Taylor Lucas, [and] then began hosting healthcare and science events for the first time by way of mocking [her] previous employments in healthcare and research." (*Id.*)

In the EEOC Charge, Calloway also stated that a co-worker, Veer, repeatedly referred to her as "love" rather than her name despite her repeated, polite requests to use her name. (*Id.* at 5.) She stated that she complained to SPB but Veer was not disciplined or discharged. (*Id.*) She also claimed that another male employee, Jamie, "always found a way to brush up against and tap [her] backside" and that the cleaning staff intentionally poured "an exorbitant amount of soapy water outside the kitchen floor causing [her] to slip and fall" on January 23, 2025. (*Id.*) She filed a workplace injury claim on February 26, 2025. (*Id.*) She claimed the date of the injury was "a mockery of The Wistar Institute's illegal termination date and its pay rate." (*Id.*) Calloway stated that she submitted a written complaint to management in March 2025, alleging gender and race discrimination in the form of a hostile work environment. (*Id.*) She claimed that SPB retaliated by giving her baseless write-ups, including when she had been approved to change shifts but the manager allegedly failed to update the schedule, when she mispronounced two other servers' names, and when she received negative customer complaints. (*Id.*) She alleged that these retaliatory write-ups "directly mimicked the complaints she previously brought" against SPB, including asking not to be called "love." (*Id.*) Calloway also asserted that the head chef sabotaged her food orders and refused to speak directly to her. (*Id.*) She claimed that her "rapid termination" was not due to negative guest complaints as she was told, because

she had been promoted to a larger table section the prior week. (*Id.*) She further stated that, "[c]ontrary to standard employer conduct, SPB Hospitality did not defend [her] against the sudden, increasingly unreasonable, racist and hostile customers who were grabbing [her] and who were repeatedly and suspiciously assigned to [her] service tables that week." (*Id.*) According to Calloway, it was "improbable that an insurmountable number of guest problems would occur in one week and only in [her] work section," and she concluded that SPB, therefore, "conspired the negative events." (*Id.*) Calloway also claimed that during a May 15, 2025 call with human resources employee Brooke Townley, she was "wrongly blamed" and notified she would be placed on "investigative leave with pay"; she was terminated a week later." (*Id.*) She averred that the date of the call somehow corresponds to "the date of a family member's unexpected death." (*Id.*)

The Addendum essentially reiterates the allegations presented in the Complaint and the EEOC Charge, and also asserts that "the defendant colluded with the federal government and [her] former employers to retaliate against [her] for [her] protected activities. (*See* ECF No. 7 at 1.) She again seeks to connect the details of certain incidents with earlier adverse actions that she alleges she suffered in prior employment. (*See e.g.*, *id.* at 1-2, stating the January 23, 2005 date when she slipped on water "mimics a previous employer's adverse actions against me"; "The defendant continued harassing me with references to this date such as reporting my last tip earnings in an unlikely amount of exactly $123.00"; "The defendant also recruited and hired new staff with names including but not limited to 'Gee,' 'Jamie,' and 'Lucas' that mocked [her] previous adverse employers including Gerado Jiminez (The Hilton Hotel), Peter Scarpati, Jo-Ann Mendel and Taylor Lucas (The Wistar Institute and The Hospital of the University of Pennsylvania).") Calloway claims that "the coordination of these events in correlation with [her]

5

former adverse employers are [sic] improbable and, therefore, done with intent to harass [her]."
(*Id.* at 2.)

## II.    STANDARD OF REVIEW

Because Calloway appears to be unable to pay the filing fee in this matter, the Court will grant her leave to proceed *in forma pauperis*.  Accordingly, the Complaint is subject to screening pursuant to 28 U.S.C. § 1915(e)(2)(B), which requires the Court to dismiss the Complaint if, *inter alia*, it is frivolous or fails to state a claim.  A complaint is subject to dismissal under § 1915(e)(2)(B)(i) as frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  It is legally baseless if "based on an indisputably meritless legal theory," *Deutsch v. United States*, 67 F.3d 1080, 1085 (3d Cir. 1995), and factually baseless "when the facts alleged rise to the level of the irrational or the wholly incredible," *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 566 (2007)); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021).  At the screening stage, the Court will accept the facts alleged in a *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether that complaint contains facts sufficient to state a plausible claim. *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024).  "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).

The Court construes the allegations of a *pro se* litigant liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "[P]ro se litigants still must allege sufficient facts in their complaints to support a claim." *Vogt*, 8 F.4th at 185 (quoting *Mala*, 704 F.3d at 245). An unrepresented litigant also "cannot flout procedural rules - they must abide by the same rules that apply to all other litigants." *Id.* (quoting *Mala*, 704 F.3d at 245).

## III. DISCUSSION

Federal law "proscribe[s] discrimination in employment based on several personal characteristics" including race and gender. *See E.E.O.C. v. Allstate Ins. Co.*, 778 F.3d 444, 448-49 (3d Cir. 2015) (citing, *inter alia*, 42 U.S.C. § 2000e-2(a)); *see also Atkinson v. Lafayette Coll.*, 460 F.3d 447, 454 n.6 (3d Cir. 2006) (claims under the PHRA are interpreted coextensively with their federal counterparts). Generally, a plaintiff in an employment discrimination action may establish a *prima facie* case of discrimination either through direct evidence, *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985), or in the absence of direct evidence of disparate treatment, based on circumstantial evidence through the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and its progeny. While "the elements of that prima facie case will vary with different factual situations, . . . at root, the plaintiff's initial burden is to show adverse actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such

actions were based on a discriminatory criterion illegal under Title VII." *Peifer v. Bd. of Prob. & Parole*, 106 F.4th 270, 276 (3d Cir. 2024) (cleaned up).

To plead a claim under Title VII, however, a plaintiff need not allege each element necessary to establish a *prima facie* case. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) ("This Court has never indicated that the requirements for establishing a prima facie case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss."), and *id.* at 515 ("[A]n employment discrimination plaintiff need not plead a prima facie case of discrimination."). Rather, at the pleading stage, a plaintiff must allege facts that provide fair notice of a plaintiff's claims and demonstrate a plausible right to relief. *See Twombly*, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"); Fed. R. Civ. P. 8(a)(2) (requiring that complaints merely contain a "short and plain statement showing that the pleader is entitled to relief"). Thus, to pass statutory screening under 28 U.S.C. § 1915(e)(2)(B)(ii) or to survive a motion to dismiss, the complaint must "put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]." *Fowler v. UMPC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009); *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 788-89 (3d Cir. 2016) ("Instead of requiring a prima facie case, the post-*Twombly* pleading standard simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements." (cleaned up)).

Based on the allegations of the Complaint, the Court understands Calloway to bring claims against SPB for hostile work environment, retaliation, and discriminatory discharge. Even under a liberal reading of the Complaint, however, Calloway has failed to allege plausible claims.

### A.    Hostile Work Environment

To plead a hostile work environment claim, a plaintiff must allege: (1) she suffered intentional discrimination because of membership in a protected class; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected her; (4) it would have detrimentally affected a reasonable person in like circumstances; and (5) the existence of *respondeat superior* liability.  *See Starnes v. Butler Cnty. Ct. of Common Pleas, 50th Jud. Dist.*, 971 F.3d 416, 428 (3d Cir. 2020) (cleaned up); *Bonenberger v. Plymouth Township*, 132 F.3d 20, 25 (3d Cir. 1997).  "Under Title VII, a hostile work environment exists when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Starnes*, 971 F.3d at 428 (quotation marks and citation omitted).  "The Supreme Court has emphasized that 'conduct must be extreme' to satisfy this standard, so 'simple teasing, offhand comments, and isolated incidents (unless extremely serious)' are inadequate."  *Nitkin v. Main Line Health*, 67 F.4th 565, 570 (3d Cir. 2023) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).  Courts consider the frequency of the conduct in the context of the case to determine whether it was "pervasive."  *See id.* at 570-71 (determining that seven comments over three-and-a-half years were neither severe nor pervasive enough to constitute a hostile work environment); *Qin v. Vertex, Inc.*, 100 F.4th 458, 471 (3d Cir. 2024) (stating that "three comments over the course of almost nineteen years simply do not reach the requisite level of frequency or severity").  Moreover, courts will consider "whether the alleged discrimination was physically threatening, humiliating, or unreasonably interfered with the plaintiff's work performance."  *Qin*, 100 F.4th at 471 (citation omitted).  In analyzing a hostile work environment

9

claim, the Court "concentrate[s] not on individual incidents, but on the overall scenario." *Id.* (citation omitted).

"When the hostile work environment is created by a victim's non-supervisory coworkers, the employer is not automatically liable." *Huston v. Procter & Gamble Paper Prod. Corp.*, 568 F.3d 100, 104 (3d Cir. 2009) (citation omitted). "[A]n employer may be directly liable for non-supervisory co-worker sexual harassment only if the employer was negligent in failing to discover the co-worker harassment or in responding to a report of such harassment." *Id.* at 104-05.[4]

In the form Complaint, Calloway alleges generally that she was subjected to sexual harassment. (*See* Compl. at 5.) She also claims that Defendant "stalked" and "collud[ed] with former, disgruntled employers" by recruiting new employees with names similar to theirs, and by hosting "healthcare buyout" events to mock her prior employment in hospitals. (*Id.*) In the EEOC Charge, Calloway alleged that she was subjected to, *inter alia*, intentional shoving, humiliating and insulting beratements from other staff and management, unnecessary loud shouting and yelling, staff that impersonated her, a refusal to provide adequate support staff, and "technical exclusions through their POS system." (ECF No. 2-1 at 4.) She also stated that a co-worker named Veer called her "love" even though she asked the co-worker to refer to her by name. (*Id.* at 5.) She stated that she complained about this to management. (*Id.*) Calloway also claimed in the EEOC Charge that a male employee named Jamie "always found a way to brush

---

[4] An employer knew or should have known about sexual harassment if "*management-level* employees had actual or constructive knowledge about the existence of a sexually hostile environment." *Huston*, 568 F.3d at 105 (quotation marks and citation omitted). Management-level employees have constructive notice of a hostile work environment when an employee provides enough information to raise a probability of sexual harassment in the mind of a reasonable employer, or if the harassment is so pervasive and open that a reasonable employer would have had to be aware of it. *Id.* at 105 n.4 (citation omitted).

up against and tap [her] backside" and that the head chef, Alberto, sabotaged her food orders and refused to speak to her.  (*Id.*)  Calloway did not allege in the EEOC Charge that she reported these allegations to management.

With regard to the allegation in the EEOC Charge that a co-worker "repeatedly" referred to her as "love" instead of by her name and that a separate co-worker "always found a way to brush up against and tap [her] backside," Calloway does not describe conduct that was severe enough or pervasive enough that it altered her conditions of employment.  *See Sousa v. Amazon.com, Inc.*, No. 22-3043, 2023 WL 7486751, at *3 (3d Cir. Nov. 13, 2023) (*per curiam*) (affirming dismissal of hostile work environment claims based on "periodic comments and occasional late-night phone calls in which supervisor sometimes inappropriately veered into plaintiff's personal life amounted to more than poor taste that is sometimes part of the 'ordinary tribulations of the workplace" (citing *Faragher*, 524 U.S. at 788); *Wiggins v. Universal Prot. Servs. LLC*, No. 22-1491, 2022 WL 4116912, at *3 (3d Cir. Sept. 9, 2022) (*per curiam*) ("Wiggins did not state a prima facie case for a hostile work environment claim, as he did not make factual allegations that could suggest that his workplace was "permeated with *discriminatory* intimidation, ridicule, and insult . . . that [was] sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment." (alterations in original)); *see also Anderson v. Family Dollar Stores of Ark., Inc.*, 579 F.3d 858, 862 (8th Cir. 2009) (affirming finding that supervisor's rubbing of plaintiff's shoulders or back at times, calling her "baby doll" and "honey," accusing her of not wanting to be "one of his girls," telling plaintiff she should be in bed with him, and insinuating she would go farther in the company if they got along, were not sufficiently severe or pervasive to create an abusive working environment); *Russell v. Univ. of Tex.*, 234 F. App'x 195 (5th Cir. 2007) (*per curiam*) (stating

that, *inter alia*, calling plaintiff "honey" or "babe" on numerous occasions was not severe or pervasive conduct for purposes of a sexual harassment claim); *Tourtellotte v. Eli Lilly & Co.*, No. 09-0774, 2013 WL 1628608, at *5 (E.D. Pa. Apr. 16, 2013) (finding "sporadic references to [the plaintiff] as 'honey' and [an] offhanded comment about [the plaintiff] getting clients to see past her pretty face," were not physically threatening or humiliating and did not "rise to the level of extreme conduct sufficient to change the terms and conditions of [the plaintiff's] employment.") *aff'd*, 636 F. App'x 831 (3d Cir. 2016). "To state a hostile work environment claim, the complaint need[s] to describe conduct that revealed the plaintiff's work environment was so permeated with discriminatory intimidation, ridicule, and insult that it altered the conditions of her employment." *Sousa*, 2023 WL 7486751, at *5 (cleaned up). Calloway has not done that here.

The allegations that the chef sabotaged her food orders and refused to speak to her, (*see* ECF No. 2-1 at 5), and her general allegations that co-workers were insulting or loud, (*see id.* at 4), do not support a hostile work environment claim because Calloway does not link such conduct to her membership in a protected class. *See Verdu v. Trustees of Princeton Univ.*, No. 20-1724, 2022 WL 4482457, at *5 (3d Cir. Sept. 27, 2022) ("Many may suffer severe or pervasive harassment . . . , but if the reason for that harassment is one that is not proscribed by Title VII, it follows that Title VII provides no relief." (citation omitted)). Moreover, "Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at discrimination because of sex." *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 80 (1998) (cleaned up). Indeed, "Title VII imposes no general civility code for the American workplace." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quotation marks and citation omitted)). "Properly applied, [the standards for judging hostility] will filter out complaints

12

attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." *Russo v. Bryn Mawr Tr. Co.*, No. 22-3235, 2024 WL 3738643, at \*7 (3d Cir. Aug. 9, 2024) (quoting *Faragher*, 524 U.S. at 788). Accordingly, the hostile work environment claims will be dismissed.

It bears noting at this stage that Calloway's Complaint is replete with fantastical allegations that do not offer plausible support for her claims. For example, she contends that Defendant "stalked" her "by colluding with former, disgruntled employers" and hiring individuals with names that she alleges correlate to those former employers, and that Defendant hosted "healthcare buyout events" to mock Calloway's previous employment in hospitals. (*See* Compl. at 5; ECF No. 2-1 at 5.) Such allegations offer an additional basis for dismissal under 28 U.S.C. § 1915(e)(2)(B)(i) as factually frivolous. *See, e.g., Aristilde Est. Ex. Rel. Aristilde v. Tradesman Int'l, LLC*, No. 26-CV-2591, 2026 WL 1350816, at \*2 (E.D. Pa. May 14, 2026) (dismissing Title VII claims under § 1915(e)(2)(B)(i) as factually frivolous); *Keo v. York Cnty. Jud. Ctr.*, No. 25-1233, 2026 WL 1513028, at \*1-2 (M.D. Pa. Jan. 12, 2026) (dismissing Title VII claims under § 1915(e)(2)(B)(i) as factually frivolous), *report and recommendation adopted*, No. 25-1233, 2026 WL 1511156 (M.D. Pa. May 29, 2026); *Hubert v. Dep't of Corr.*, No. 23-0563, 2024 WL 3442399, at \*5 (D. Conn. July 17, 2024) (dismissing Title VII claims that were based on delusional allegations).

### B.    Retaliation

Title VII also prohibits an employer from retaliating against an employee for opposing any act made unlawful by the employment discrimination statutes, or because she made a charge, testified, assisted, or participated in an investigation, proceeding, or hearing under the employment discrimination statutes. *See* 42 U.S.C. § 2000e-3(a); *Allstate Ins. Co.*, 778 F.3d at

13

449.  A plaintiff seeking to state a claim for retaliation under Title VII must plead sufficient factual allegations to raise a reasonable expectation that discovery will reveal evidence of the following elements:  (1) she engaged in conduct protected by Title VII; (2) the employer took adverse action against her; and (3) a causal link exists between her protected conduct and the employer's adverse action.  *See Connelly*, 809 F.3d at 789.

Title VII protects "those who oppose discrimination made unlawful by Title VII."  *Moore v. City of Philadelphia*, 461 F.3d 331, 341 (3d Cir. 2006).  Only complaints about discrimination prohibited by Title VII—that is, discrimination on the basis of race, color, religion, sex, or national origin, 42 U.S.C. § 2000e–2—constitute "protected activity."  *Davis v. City of Newark*, 417 F. App'x 201, 202-03 (3d Cir. 2011) (*per curiam*) (citing *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 701-02 (3d Cir. 1995)).  "Thus, for a complaint to amount to 'protected activity,' it must implicate an employment practice made illegal by Title VII."  *Id.* at 203 (citing *Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*, 450 F.3d 130, 135 (3d Cir. 2006)).  A general complaint about unfair treatment does not suffice.  *Id.* (citing *Barber*, 68 F.3d at 702).

Calloway claims retaliatory actions were taken against her after she reported "a workplace injury that occurred on January 23, 2025," which is the date she alleges she slipped on water that she believes was intentionally spilled by the cleaning staff outside the kitchen.  (*See* Compl. at 5 and ECF No. 2-1 at 5.)  She also claimed in the EEOC Charge that the date of the injury "is a mockery of The Wistar Institute's illegal termination date and its pay rate."  (ECF No. 2-1 at 5.)  When she reported a workplace injury, Calloway did not engage in protected conduct for purposes of Title VII.  Further, linking the date of the injury to The Wistar Institute is factually frivolous.

14

While the EEOC Charge provides more detail about Calloway's retaliation allegations, it does not provide plausible support for her claims. She stated in the EEOC Charge that after she alleged gender and race discrimination due to being called "love" in a written complaint to management in March 2025, she was written-up for frivolous reasons, including "one shift where [she] was approved to switch work days but the manager failed to update the schedule which misrepresented [her]," mispronouncing two other servers' names, and false, negative customer complaints which "directly mimicked" complaints she raised to management. (ECF No. 2-1 at 5.) She claimed that SPB failed to defend her against "the sudden, increasingly unreasonable, racist and hostile customers who were grabbing [her] and who were repeatedly and suspiciously assigned to [her] service tables." (*Id.*) Calloway concluded that it was "improbable that an insurmountable number of guest problems would occur in one week and only in [her] work section." (*Id.*) She concludes that SPB "conspired the negative events." (*Id.*)

"Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly*, 809 F.3d at 786. Calloway's allegations of retaliation are speculative and not plausible. *See Twombly*, 550 U.S. 544, 555 (2007) (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"); *see also Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 ("A plaintiff cannot survive dismissal just by alleging the conclusion to an ultimate legal issue."). Additionally, her assertion that negative customer reviews correlate to discrimination by prior employers, that SPB organized events to mock her prior employment roles, or that SPB hired individuals with names that she contends are similar to prior employers, are simply not based in rational fact. Accordingly, Calloway's retaliation claims will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

15

C.      **Discriminatory Discharge**

The *McDonnell Douglas* framework provides that a plaintiff claiming discrimination must show: (1) she is a member of a protected class; (2) she was qualified for the position in question; (3) she suffered an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination.  *See McDonnell Douglas Corp.*, 411 U.S. at 802; *see also Qin*, 100 F.4th at 472-73 (same).  Calloway asserts generally that SPB took adverse employment actions against her based on her race and gender, including terminating her employment, but she fails to allege any facts that would raise a reasonable expectation that discovery would uncover evidence that her membership in a protected class was either a motivating or determinative factor in SPB's termination decision.

The Court understands Calloway to allege that her employment was suddenly terminated in May 2025 after customer complaints were lodged against her and after she was written up.  (*See generally* Compl. at 5 and ECF No. 2-1 at 5.)  The Complaint, supplemented by the EEOC Charge, states that Calloway received negative customer reviews, after previously receiving positive customer reviews, and that SPB failed to defend her against "sudden, increasingly unreasonable, racist and hostile customers . . . who were repeatedly and suspiciously assigned" to her tables.  (*See* Compl. at 5; ECF No. 2-1 at 5.)  She surmises in the EEOC Charge that "[i]t is improbable that an insurmountable number of guest problems would occur in one week and only in [her] work section, and therefore, . . . [SPB] conspired the negative events."  (ECF No. 2-1 at 5.)  She also alleges that the write-ups were to "mock" her prior complaints to management.  (*See* Compl. at 5; ECF No. 2-1 at 5.)  Calloway states that she was placed on investigative leave on May 15, 2025, and terminated a week later.  (*Id.*)

16

In so alleging, Calloway presents no facts to plausibly suggest that race or gender were involved in any way in the determination to terminate her employment, as she must. *See Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 798 (3d Cir. 2003) ("The central focus of the *prima facie* case is always whether the employer is treating some people less favorably than others because of their race, color, religion, sex, or national origin." (cleaned up)). While Calloway need not allege each element of the *prima facie* case at this stage of the litigation, her allegations of discriminatory discharge are wholly unsupported and conclusory. None of the allegations she presents in the Complaint reasonably raise an inference that the termination was linked to Calloway's race or gender. Accordingly, her discriminatory discharge claim will be dismissed. *See, e.g., Peebles v. Chain IQ Americas Inc.*, No. 25-1419, 2026 WL 281174, at *2 (3d Cir. Feb. 3, 2026) (affirming dismissal of Title VII claim where plaintiff "did not present factual allegations that plausibly support the legal conclusions that Title VII . . . ultimately require[s]" because plaintiff failed to link termination decision to plaintiff's race).

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant Calloway leave to proceed *in forma pauperis* and dismiss the Complaint with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii). Even under a liberal construction of the Complaint, reading it as a whole, and considering the allegations in the EEOC Charge, Calloway has failed to allege a plausible basis for a claim. Thus, under the circumstances of this case, amendment would be futile. Additionally, Calloway's request for appointment of counsel (ECF No. 3) will be denied as moot.

An appropriate order follows dismissing this case, which shall be entered separately.  See

Fed. R. Civ. P. 58(a). amendment.

BY THE COURT:

_____

**MARY KAY COSTELLO, J.**